UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CRUZ HERNANDEZ, a minor, by and through his Guardian ad Litem, Alicia Telles-Hernandez,<br><br>        Plaintiff,<br><br>   vs.<br><br>SUTTER MEDICAL CENTER OF SANTA ROSA, DON CARLOS STEELE, M.D., NATASHA KAHL, M.D., and DOES 1 through 25, inclusive,<br><br>        Defendants. | Case No: C 06-3350 SBA<br><br>**ORDER DENYING PLAINTIFF'S MOTIONS IN LIMINE**<br><br>[Docket 196, 197] |

This is a medical malpractice action brought by Plaintiff Cruz Hernandez, by and through his guardian ad litem and mother, Alicia Telles-Hernandez ("Hernandez"). Plaintiff was born with severe developmental disabilities that he claims were caused by the allegedly negligent care provided by Defendants during Hernandez's labor and delivery. A pretrial conference is set for May 5, 2009, and a court trial is scheduled to commence on May 18, 2009. The parties are presently before the Court on the Plaintiff's Motions in Limine Nos. 1 and 2. (Docket 196, 197.) Having read and considered the papers submitted, and being fully informed, the Court DENIES both motions.

**I.    BACKGROUND**

    **A.    FACTUAL OVERVIEW**

The parties are familiar with the facts of this matter, and they will only be briefly summarized here. In the late evening of October 9, 2002, Hernandez (then 18 years old) was admitted to the Sutter Medical Center of Santa Rosa ("Sutter") for spontaneous rupture of membranes. The following morning on October 10, 2002 at around 6:00 a.m., Dr. Don Carlos Steele administered the drug Pitocin, a labor inducing medication. Later in the afternoon, she

stopped receiving Pitocin and was placed on Cytotec. By evening, Hernandez showed signs of dilating.

The next day, on October 11, 2002, Hernandez again received Pitocin at around noon. The labor progressed slowly and at around 5:35 p.m., Hernandez received an epidural anesthesia. A few hours later, she was offered a cesarean delivery (also known as a "C-section"), which she declined. Her labor did not progress, and around 9:35 p.m., the hospital performed a C-section due to the cessation of labor and the position of the fetus. The newborn (Plaintiff Cruz Hernandez) was taken immediately to Neonatal Intensive Care Unit, where he exhibited seizure activity. Plaintiff (now 8 years old) was born with severe neurological damage. He is a spastic quadriplegic with severe mental retardation and is dependent on a feeding tube.

### B. PROCEDURAL SUMMARY

On May 22, 2006, Plaintiff filed suit in this Court against Sutter, Dr. Kahl and Dr. Steele (in whose place the United States has been substituted as a Defendant) for medical negligence. Plaintiff contends that he suffered severe brain injury as a result of hypoxic ischemic brain insult (oxygen deprivation), which he asserts could have been prevented had the C-section occurred sooner. Defendant disputes this and claims that Plaintiff's condition resulted from a subclinical (i.e., present but not detectable) maternal intrauterine infection. Plaintiff has settled with Sutter and Dr. Kahl, leaving the United States as the only remaining Defendant.

In anticipation of the June 2, 2008 trial date, Defendant filed three motions in limine. (Docket Nos. 86, 87 and 88.) Due to a conflict with a criminal trial, the Court continued the trial to December 1, 2008. At the parties' request, the Court issued an order continuing the trial to May 18, 2008, and correspondingly reset various deadlines for pretrial documents based on dates proposed by the parties. (Docket 159.) Thereafter, the Court issued an order denying all previously filed motions in limine as moot, and noted that "[i]f the parties wish to file motions in limine, they should do so based on the current scheduling order [Docket No. 159]." (Docket 177.) Under that scheduling order, all motions in limine were due by April 21, 2009. Plaintiff filed two

motions in limine on April 21, 2009, which Defendant has timely opposed. (Docket 196, 197, 204, 205.)[1]  The Court discusses each motion below.

## II. ANALYSIS

### A. MOTION IN LIMINE TO PRECLUDE DUPLICATIVE EVIDENCE BY DEFENDANT'S EXPERT WITNESSES ON CAUSATION (MIL NO. 1)

Defendant has designated three expert witnesses on the issue of causation: (1) Dr. Yvonne Wu (neurologist); (2) Dr. Jerome Barakos (neuroradiologist); and (3) Dr. Gil Martin (neonatologist). In his motion in limine, Plaintiff contends, without citing any relevant authority, that Defendant should be limited to only *one* expert witness on the issue of causation, and that any additional experts would be duplicative under Federal Rule of Evidence 403. However, Plaintiff cites no authority for the proposition that a party in a medical malpractice case automatically is limited to one expert on the issue of causation -- an issue that is central to any malpractice claim. See Espinosa v. Little Co. of Mary Hospital, 31 Cal.App.4th 1304, 1314-1315 (1995).[2] Indeed, Plaintiff himself has designated two medical experts on this issue. (See Lee Decl. Exs. C, D.)

In any event, the Court disagrees that the testimony of Defendant's experts necessarily will be duplicative. While all three will offer testimony to refute Plaintiff's theory that his neurological damage was caused by medical negligence, the basis and perspective of their respective opinions are predicated specifically on their particular areas of expertise. For example, Dr. Barakos, a neuroradiologist, opines, based on his review of an MRI of Plaintiff's brain taken three days after

---

[1] Although Defendant did not renew any of its motions in limine, Plaintiff nonetheless filed oppositions to Defendant's previously-filed first and second motions in limine, and a statement of non-opposition as to the third. (Docket 198, 199, 200.) Plaintiff's responses were unnecessary given that there are no pending motions in limine by the Defendant. Nevertheless, the Court notes that Plaintiff does not oppose Defendant's previously-filed motion in limine no. 3. In that motion, the Government purported to invoke its rights under the Medical Injury Compensation Reform Act, and requested that in the event of an award of future damages greater than $50,000, such award be payable through periodic payments. The Court construes Plaintiff's recent statement of non-opposition as a stipulation to such request.

[2] Plaintiff does cite California Evidence Code section 723, pursuant to which he claims "[i]t is the policy of the court that parties are limited to one expert per field of expertise per side." (Pl.'s Mot. at 4.) It is axiomatic that the Federal Rules of Evidence, not the California Rules of Evidence, are controlling in this matter. Nevertheless, Evidence Code section 723 simply states that: "The court may, at any time before or during the trial of an action, limit the number of expert witnesses to be called by any party."

birth, that his injury resulted from oxygen deprivation.  (See id. Ex. A at 3.)  Dr. Wu, a child neurologist and epidemiologist, will offer testimony that a subclinical maternal intrauterine infection caused Plaintiff's brain damage.  (See id. Ex. B at 5.)  As for Dr. Martin, whose opinions are from the perspective of a neonatologist (a subspecialty of pediatrics that focuses on newborn infants), he believes that Plaintiff's neurological injuries resulted from "an infectious and/or inflammatory response" consistent with Fetal Inflammatory Response Syndrome.  (See id. Ex. C at 4.)

In sum, the Court concludes that the anticipated testimony from Defendant's three experts will not be duplicative within the meaning of Rule 403.  Both parties should be aware, however, that they will be allotted a limited amount of time at trial, and that it is in each of their respective interests to present the testimony of their experts in an effective and efficient manner that avoids unnecessary duplication and needless expenditure of time.  Accordingly, Plaintiff's Motion in Limine No. 1 is DENIED.

### B. MOTION IN LIMINE TO PRECLUDE DEFENSE DESIGNATED EXPERT DR. WU FROM TESTIFYING WITH REGARD TO CAUSATION (MIL NO. 2)

Plaintiff's second motion in limine seeks to preclude Defendant from offering the testimony of Dr. Wu.  Dr. Wu is a board certified child neurologist and a neuroepidemiologist at the University of California, San Francisco.  (Lee Decl. Ex. B at 1.)  In addition to reviewing Plaintiff's medical records, she performed an independent medical evaluation of the Plaintiff.  According to the Defendant's Witness List, Defendant intends to call Dr. Wu to testify regarding matters disclosed in her Rule 26 report, including the cause of Plaintiff's injury.  Dr. Wu's conclusion is that Plaintiff's brain damage was caused by a "subclinical maternal intrauterine infection," as opposed to an inadequate oxygen supply to the brain.  (Id. at 5.)

Pursuant to Rules 403 and 702, Plaintiff argues that Dr. Wu should not be allowed to testify at trial on the ground that her opinions do not comport with the requirements of Daubert.  See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993). Rule 702 allows for the admission of "scientific, technical, or other specialized knowledge" when "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3)

the witness has applied the principles and methods reliably to the facts of the case." Daubert provides guidance on the admissibility of testimony under Rule 702. "A district court may rely on various factors in evaluating such evidence, including (1) whether the theory can be or has been tested; (2) whether the theory has been subjected to peer review; (3) whether the error rate is known and standards exist to control the operation of the technique; and (4) whether the theory has gained general acceptance." United States v. McCaleb, 552 F.3d 1053, 1060 (9th Cir. 2009) (citing). The court has "broad discretion" in determining the admissibility of expert testimony and is not required to "mechanically apply the Daubert factors[.]" Id. (internal quotations and citation omitted).

Plaintiff argues that all of Dr. Wu's testimony on causation should be disallowed on the ground her "opinions fail to meet any of the factors set forth in Daubert." (Pl.'s Mot. in Limine No. 2 at 5.) However, Plaintiff never actually discusses any of the Daubert factors. Nor does he specifically identify the scientific theory at issue. Instead, Plaintiff quotes incomplete snippets of her deposition testimony, which he then follows by the *ipse dixit* that Dr. Wu "admits that the animal studies don't translate well into humans, she 'hardly' has the experience reading fetal monitoring strips which is integral to this case, and where she disagrees with what 'everyone' says (the medical community) including what the books say, she offers no methodology or data of her own, just that she is skeptical." (Pl.'s Mot. in Limine No. 2 at 5.)[3] Setting aside the inaccurate characterization of Dr. Wu's deposition testimony, Plaintiff's non-sequitur argument, at best, is germane to the weight of her opinions, not to their admissibility. See Bergen v. F/V St. Patrick, 816 F.2d 1345, 1352 n.5 (9th Cir. 1987) ("the weakness in the underpinnings of [expert] opinions may be developed upon cross-examination," as "such weakness goes to the weight and credibility of the testimony" as opposed to its admissibility) (internal quotations and citation omitted). For these reasons, Plaintiff's Motion in Limine No. 2 is DENIED.

---

[3] Plaintiff quotes only three questions and answers from Dr. Wu's deposition, which are not quoted in their entirety. In addition, Plaintiff has not provided the Court with authenticated copies of the cited portions of Dr. Wu's deposition to facilitate its review those statements in context.

### III. CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT Plaintiff's Motion in Limine No. 1 (Docket 196) and Motion in Limine No. 2 (Docket 197) are DENIED.  The pretrial conference scheduled for May 5, 2009 shall proceed as scheduled.

IT IS SO ORDERED.

Dated: April 30, 2009

_____
Hon. Saundra Brown Armstrong
United States District Judge